UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARK CUSTER, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|     vs. | ) CAUSE NO.  1:06-cv-1208-WTL-JDT |
| | ) |
| SCHUMACHER RACING CORP., et al., | ) |
| | ) |
|   Defendants. | ) |

## ENTRY REGARDING POST-TRIAL MOTIONS

This was a well-litigated case involving competent attorneys that in the end resulted in the entry of summary judgment in favor of Defendant Schmacher Electric Corporation and a jury verdict in favor of Defendant Schumacher Racing Corporation.  The myriad of motions that have been filed in this case since the entry of final judgment can best be summed up as an unfortunate, surprising, and disappointing battle between attorney Dan Buba, counsel for the Plaintiff, and attorney Cory Watkins, counsel for the Defendant.  Indeed, the situation has become absurd enough that it might have been amusing if not for the judicial resources that have been required to resolve it.

It all began reasonably enough, with Mr. Watkins filing a timely Bill of Costs on behalf of Schumacher Racing Corporation seeking costs in the amount of $4593.19.  The Bill of Costs was accompanied by a Motion for Costs, which was unnecessary, but certainly not improper. The motion presaged what was to come, however, by recounting a rather uncivil conversation between Mr. Watkins and Mr. Buba during which Mr. Buba threatened to move for sanctions if the Defendant sought costs, although he refused to explain why because–at least as reported by Mr. Watkins–he said he did not have time to educate Mr. Watkins on the law.

True to his word, Mr. Buba did respond by objecting to the motion for costs and seeking sanctions against Schumacher Racing. As it turns out, it is fortunate that Mr. Watkins was not dependent on Mr. Buba for his legal education, inasmuch as his response brief–filed less than 4½ hours after the motion for costs–contains numerous legal and logical fallacies. Without question Mr. Buba would have been well served to take some time for circumspection before filing his brief; not only might he have realized his errors in legal reasoning, but perhaps he also would have toned down his rhetoric to a more appropriate level.

As it is, Mr. Buba's first argument is that because Schumacher Electric's motion for summary judgment was granted on November 1, 2007, any bill of costs by Schumacher Electric was due 14 days from that date pursuant to Local Rule 54.1. That is incorrect. The time for filing a bill of costs begins to run upon the entry of final judgment, and the granting of a summary judgment motion is not a final judgment. Federal Rule of Civil Procedure 54(b). Therefore, had it wished to, Schumacher Electric could have filed a bill of costs at the same time that Schumacher Racing did; indeed, any bill of costs filed by Schumacher Electric prior to the entry of final judgment following trial would have been premature. All of this is merely academic, however, inasmuch as Schumacher Electric has not filed a bill of costs; while its waiver of its right to do so occurred several weeks later than Mr. Buba asserts, it has, in fact, now been waived.

Mr. Buba's next problematic argument is that Schumacher Racing is not entitled to recover the category of costs denominated "fees to clerk"[1] because of the Defendants' "misconduct." Specifically, Mr. Buba alleges that when the Defendants removed this case from

---

[1] The "fees to clerk" consist of the filing fee the Defendants paid when they removed this case from state court and the *pro hac vice* fees they paid for their Illinois-based in-house counsel.

state court on August 9, 2006, they falsely represented that they first discovered that the amount in controversy exceeded $75,000 on August 2, 2006, when it received a letter from Plaintiff' containing a settlement demand of $142,500.  In fact, Mr. Buba asserts, the Defendants actually learned of that fact on April 6, 2006, when they received the Plaintiff's response to their requests for admission; thus, their notice of removal was untimely and removal was fraudulently obtained.[2]

The Court need not address the issue of whether such a scenario would constitute the type of misconduct that would justify the denial of costs, because that scenario did not take place in this case.  The request for admission referenced by Mr. Buba asked the Plaintiff to admit "that the damages that you swear that you have suffered as a proximate result of the incident total no more than $75,000 in damages."  If what the Defendants intended to ascertain is whether the Plaintiff's asserted damages satisfied the jurisdictional requirement for diversity jurisdiction, this was sloppy drafting by defense counsel, because the question that they asked was not sufficient to make that determination.  Diversity jurisdiction requires that the amount in controversy *exceed* $75,000, while the Plaintiff's denial of the request for admission as worded only established that it was *at least* $75,000.  A technical point, to be sure, but one that would have prohibited this court from exercising jurisdiction over this case based solely on the request for admission response.

Mr. Buba also argues the following with regard to Schumacher Racing's fees of the clerk:

> To the extent Defendant claims Removal was proper as to Defendant Schumacher

---

[2] Mr. Buba does not explain why he did not discover this alleged defect in the removal petition at the relevant time.

> Electric, the "Fees of Clerk" should nevertheless be denied. As noted above, Defendant Schumacher Electric obtained summary judgment in this case on November 1, 2006. The current Motion for Costs as to Defendant Schumacher Electric, therefore, is untimely. Consequently, Defendant Schumacher Racing's request for "Fees of the Clerk" should be denied. At an absolute minimum, said costs are equally attributable to the former co-Defendant, Schumacher Electric, and should therefore be cut in half.

Plaintiff's Response at 4. The Court has quoted this paragraph because, frankly, it is not entirely clear what it means, and the brief gives no further clues. To the extent that Mr. Buba is suggesting that Schumacher Racing must show that it, and not Schumacher Electric, paid the costs in question, that is a legitimate argument, and while Schumacher Racing's original submissions were ambiguous in that regard, it made the requisite showing in its reply brief.[3] To the extent that Mr. Buba suggests that these and other categories of costs[4] must be divided between the two Defendants, that argument is without merit. The costs in question would have been the same if Schumacher Racing had been the only defendant in this case from the beginning;[5] accordingly, Schumacher Racing is obligated to recover the full amount of those costs.

      Mr. Buba next argues that Schumacher Racing's requested costs related to obtaining the

---

[3]The documents submitted by Schumacher Racing suggest the Schumacher Electric paid for all of the costs, even those that were incurred after it was dismissed from the case. However, Schumacher Racing demonstrated in its reply brief that Schumacher Electric has invoiced Schumacher Racing for all of the costs, which is not at all surprising in light of the fact that it was Schumacher Racing, not Schumacher Electric, who had a duty to the Plaintiff under Indiana law.

[4]Mr. Buba makes the same argument with regard to the costs related to obtaining medical records and deposition transcripts.

[5]Mr. Buba's argument would have merit if Schumacher Racing and Schumacher Electric had, in fact, split the costs in this case, or if the court fees were charged per defendant rather than per case.

Plaintiff's medical records should be denied because they were not necessary, inasmuch as the Plaintiff provided the Defendants with copies of his medical records. The Defendants were entitled to obtain the records directly from the Plaintiff's physicians, however, in order to ensure that they obtained a complete set of records. Accordingly, those costs are recoverable.

Next, Mr. Buba argues that it was unnecessary for Schumacher Racing to obtain an unredacted version of the video of Dr. Egwu's deposition, in light of the fact that they already had a written transcript and they knew that the Plaintiff would be redacting the video prior to trial and would provide Schumacher Racing with a copy of the final version. Schumacher Racing does not respond to this argument in its reply, and the Court agrees with Mr. Buba that Schumacher Racing is not entitled to the $90 it spent to obtain the video. In addition, the parties agree that Schumacher Racing is not entitled to recover the $100.00 in copying costs for trial exhibits that it seeks in light of the fact that, by agreement of the parties, the cost of those copies was fronted by the Plaintiff and the Plaintiff has agreed not to seek reimbursement from Schumacher Racing for its half of those costs.

Mr. Buba is also correct with regard to Schumacher Racing's request for its expert witness expenses in the amount of $2,273.75. Those expenses clearly are not recoverable as costs, *Crawford Fitting Co. v. J.T. Gibbons*, 482 U.S. 437 (1987), and Schumacher Racing's argument to the contrary frankly is unintelligible.

What all of this means is that Schumacher Racing is entitled to, and is **GRANTED**, an award of costs in the amount of $2129.44. Ordinarily, that would end the matter. On second thought, ordinarily the matter would have ended several pages ago; a simple bill of costs should not take five pages to resolve. Unfortunately, however, in this case there is more. As previously mentioned, Mr. Buba also seeks sanctions against Schumacher Racing for "seeking costs that are

clearly not allowed; are the result of Defendant's own misconduct; and/or are attributable in whole or half to a former co-Defendant to the litigation." Indeed, the Court notes that Mr. Buba devoted more than twice the number of lines in his brief to the issue of sanctions (approximately 33) than he did to his three winning arguments (approximately 15). Suffice it to say that the request for sanctions was unfounded and imprudent and is **DENIED**.

But alas, there is more. Not to be outdone in the imprudent motion department, Mr. Watkins further cluttered the Court's docket by filing a motion to strike the request for sanctions on the sole ground that Mr. Buba "blatantly" violated Local Rule 7.1 by including his request for sanctions within his response brief, rather than filing a separate motion for sanctions. That motion to strike is **DENIED** as frivolous. So, too, is the duplicative motion for sanctions filed by Mr. Buba just in case Mr. Watkins' reading of Rule 7.1 was correct and a separate motion was required.

Finally, and perhaps most unfortunate of all, is Mr. Buba's Motion to Strike Defendant's Reply to Plaintiff's Objection to Motion for Bill of Costs, in which Mr. Buba asserts that Schumacher Racing's reply in support of its motion for costs, which was filed on January 2, 2008, was untimely. It was not. Local Rule 7.1(b) provides that a party has "seven (7) days after service of the response in which to serve and file a reply." Therefore, Mr. Buba argues, because the response was filed and served on December 20, 2007,[6] the reply was due seven days later, on December 27th. This argument ignores the fact that Local Rule 7.1(b) also provides that time is to be computed pursuant to Federal Rule of Civil Procedure 6. While the actual

---

[6] Mr. Buba states in his motion to strike that the response was filed "[o]n or about December 20, 2007," an ironic use of that particular lawyerism considering the topic of the motion.

computation of the deadline in this particular instance is somewhat complicated, as discussed below, even a cursory reading of Rule 6 makes it clear that the applicable deadline was not December 27th.

In fact, Rule 6 contains several relevant provisions. Rule 6(a)(2) provides that when, as here, a time period of less than eleven days is being calculated, intermediate Saturdays, Sundays, and legal holidays are not counted. Rule 6(a)(4)(A) defines legal holidays to include, *inter alia*, Christmas Day and any day declared a holiday by the President; December 24, 2007, was such a President-declared holiday.[7] Rule 6(d) provides that when, as in this case, service is made by the court's electronic case filing system, "3 days are added after the period would otherwise expire under Rule 6(a)." Finally, Rule 6(a)(3) provides that if the last day of a prescribed period falls on a Saturday, Sunday, or legal holiday, the period runs until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Putting all of these rules together, then, the seven-day time period provided for the reply brief was counted as follows:

---

[7] In *Hart v. Sheahan*, 396 F.3d 887, 891 (7th Cir. 2005), the court determined that Friday, December 26, 2003, had been a President-declared holiday for purposes of Rule 6. The President had issued an executive order declaring that "Friday, December 26, 2003, shall be considered as falling within the scope of Executive Order 11582 of February 11, 1971, and of 5 U.S.C. 5546(b)"; the same type of executive order was issued with regard to December 24, 2007, and there does not appear to be anything to rebut the presumption established in *Hart* that such an order constitutes the declaration of a holiday by the President as contemplated by Rule 6(a)(4)(B). Of course, the closure of this court required an additional order by the Chief Judge, but, ironically, it is not the fact that the court was closed that is relevant under Rule 6, but rather the fact that the President declared a "holiday." Indeed, this court also was closed on December 31, 2007, by order of the Chief Judge, but that day is not excluded under Rule 6 because there was no Presidential order with regard to that day. Counsel could be excused for being unaware of these subtleties, but there is no excuse for missing the fact that intermediate weekends and the legal holidays enumerated in Rule 6(a), including Christmas and New Years Day, are not counted when calculating a seven-day deadline.

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| December 16 | December 17 | December 18 | December 19 | December 20<br><br>Response Filed by Plaintiff | December 21<br><br>DAY 1 | December 22<br><br>Saturday not counted per Rule 6(a)(2) |
| December 23<br><br>Sunday not counted per Rule 6(a)(2) | December 24<br><br>President-declared holiday, so not counted | December 25<br><br>Legal holiday not counted per Rule 6(a)(2) | December 26<br><br>DAY 2 | December 27<br><br>DAY 3 | December 28<br><br>DAY 4 | December 29<br><br>Saturday not counted per Rule 6(a)(2) |
| December 30<br><br>Sunday not counted per Rule 6(a)(2) | December 31<br><br>DAY 5 | January 1<br><br>Legal holiday not counted per Rule 6(a)(2) | January 2<br><br>DAY 6 | January 3<br><br>DAY 7 | January 4<br><br>1st extra day per Rule 6(d) | January 5<br><br>2nd extra day per Rule 6(d) |
| January 6<br><br>3rd extra day, but period cannot end on a Sunday | January 7<br><br>DEADLINE | January 8 | January 9 | January 10 | January 11 | January 12 |

The reply brief was not due until January 7, 2008, and thus was timely when it was filed on January 2nd.[8]  The motion to strike is therefore **DENIED.**

Mr. Buba and Mr. Watkins managed to turn what should have been a routine bill of costs requiring minimal time and effort on the part of both counsel and the Court into an unpleasant chore than has commanded far more attention from the Court than was warranted.  It is the Court's sincere hope that both attorneys now realize the impropriety of their behavior and regret using the Court's docket as a forum for airing their apparent animosity toward one another.

SO ORDERED:   2/08/08

Hon. William T. Lawrence, Magistrate Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

---

[8] Unlike Mr. Buba, Mr. Watkins recognized that Rule 6 applied; however, he failed to apply it correctly and believed his reply to be due on January 2nd.

8